462 P.2d 850

**Aletha TODD, a mentally ill person by her Guardian ad litem, Anell Carter, Appellant,**

**v.**

**Thomas MELCHER and Norman W. Johnson, Jr., Appellees.**

**No. 1 CA–CIV 932.**

Court of Appeals of Arizona, Division 1.

Department B.

Dec. 22, 1969.

Rehearing Denied Jan. 19, 1970.

Moore & Moore, by A. Y. Moore, Phoenix, for appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Thomas A. McGuire, Phoenix, for appellees.

HAIRE, Judge.

Plaintiff, a mentally ill person, through her guardian ad litem sued defendants-appellees herein, two deputy sheriffs of Maricopa County, for damages said to have been caused by their allegedly malicious criminal prosecution of plaintiff. Defendants moved for summary judgment contending that the undisputed material facts of the case showed that they had probable cause to believe that plaintiff was guilty of the crime of which they accused her, and that the existence of such probable cause was a defense to plaintiff's claim. The trial court granted defendants' motion and plaintiff brought this appeal.

The facts of this case stated in a light most favorable to the plaintiff-appellant are as follows: At approximately 1:00 a. m. on December 13, 1966, defendant Johnson was patrolling an area near the intersection of McKellips Road and Val Vista in Mesa, Arizona when he came upon a car in which plaintiff was sitting. The car was parked on the north side of the road right-of-way in front of an orange grove. The car was facing south and its lights were out. Defendant Johnson approached the car. He saw plaintiff sitting in the back seat and asked plaintiff her name. She began to cry. He then asked her what was wrong and plaintiff responded that nothing was the matter; the plaintiff further stated that she was alone. When asked by defendant, plaintiff did not adequately explain what she was doing there.

Shortly thereafter one DuPuis walked up to plaintiff and defendant. When asked, DuPuis stated that he had no driver's license. He was otherwise without identification reflecting his address. He told defendant that plaintiff had driven the car there.

About fifteen minutes later Miss Anell Carter, the plaintiff's guardian ad litem, came upon plaintiff, defendant and DuPuis. She told defendant that plaintiff was mentally incompetent. After further interrogation, defendant Johnson called for another officer to be dispatched. Defendant Melcher arrived shortly thereafter. Noticing that the ignition keys were in the trunk lock, defendants asked Miss Carter to open the trunk. Miss Carter did so and thus revealed two and one-half bushels of juice oranges, some having their stems and leaves still attached thereto. Miss Carter told defendants that she had purchased the oranges three days earlier.

The defendants also observed three stacks of oranges nearby, a bag, and numerous footprints around these stacks. Defendants measured those footprints and footprints near the car and found the measurements to be identical.

After informing DuPuis of his constitutional rights, defendant Melcher questioned him. DuPuis said that he, Miss Carter and plaintiff were returning from Phoenix when Miss Carter became ill. They stopped to allow her to get out of the car.

Defendants released all three suspects. Shortly thereafter, defendant Melcher went to the Mesa Sheriff's Office to get a camera. Defendant Johnson remained upon the premises. Upon his return, defendant Melcher photographed the footprints and bag and took the three piles of oranges to the Mesa Sheriff's Office.

The defendants subsequently discussed the foregoing events with a deputy county attorney though they did not inform him that one of the suspects said that plaintiff was mentally incompetent. The deputy county attorney stated that in his opinion there existed probable cause to believe that petty theft and/or trespassing had been committed by all three suspects. A crim-

inal complaint was filed and a warrant issued. Plaintiff was arrested and incarcerated for about twenty-four hours. The charges against plaintiff were dismissed after the Justice of the Peace was made aware of her incompetence. She subsequently brought this action.

In the trial court, the defendants asserted that they had probable cause to institute criminal proceedings against plaintiff for two reasons: (1) they consulted a deputy Maricopa county attorney who advised them that, upon the facts they related to him, there was probable cause to believe that a crime had been committed; (2) the facts and circumstances within their knowledge after completing their investigation at the scene of the alleged crime were sufficient to warrant their believing that plaintiff was guilty of the crime of which they accused her. As will be shown, it is the law of this state that either of the foregoing would preclude plaintiff's recovery herein.

■ A plaintiff may not prevail in an action for malicious prosecution where the defendants who instituted the criminal proceedings against plaintiff had probable cause to believe that plaintiff committed the crime of which they accused her. Patterson v. City of Phoenix, 103 Ariz. 64, 436 P.2d 613 (1968); Overson v. Lynch, 83 Ariz. 158, 317 P.2d 948 (1957); McClinton v. Rice, 76 Ariz. 358, 265 P.2d 425 (1953).

■ If a full and truthful disclosure has been made to a licensed attorney by a potential complainant having no reason to distrust the advice of such counsel, and if the attorney advised the complainant that the conduct so disclosed constitutes a criminal offense, existence of the complainant's probable cause is established as a matter of law. Wisniski v. Ong, 84 Ariz. 372, 329 P.2d 1097 (1958); Tate v. Connel, 3 Ariz. App. 534, 416 P.2d 213 (1966). This is especially true where, as here, the attorney consulted is a public official charged by law with prosecuting the type of offense involved. Tate v. Connel, *supra.*

It is one of plaintiff's contentions on appeal that defendants failed to tell the deputy county attorney that Miss Carter advised them that plaintiff's response to their interrogation was due to plaintiff's mental illness. Assuming that Miss Carter did so inform defendants and that defendants did not disclose that fact to the deputy county attorney, and assuming *arguendo* the materiality and relevance of that fact, it might be validly argued that defendants failed to make a full and truthful disclosure to the attorney and are thus precluded from establishing probable cause based upon advice of counsel. See Wisniski v. Ong, *supra.* However, as stated above, defendants also asserted that the results of their own investigation alone—irrespective of the deputy county attorney's advice—gave them probable cause to believe in plaintiff's having committed the crime of which they accused her. We agree and therefore need not discuss further the "advice of counsel" questions raised by plaintiff.

■ Probable cause is "a reasonable ground of suspicion, supported by circumstances sufficient to warrant an ordinarily prudent man in believing the accused is guilty of the offense, * * *." McClinton v. Rice, *supra,* 76 Ariz. at 367, 265 P.2d at 431. Whether a given state of facts constitutes probable cause is always a question of law to be determined by the court. Sarwark Motor Sales, Inc. v. Woolridge, 88 Ariz. 173, 354 P.2d 34 (1960); Murphy v. Russell, 40 Ariz. 109, 9 P.2d 1020 (1932). The facts of this case, even when stated in a manner most favorable to plaintiff, do establish as a matter of law the existence of probable cause.

■ Plaintiff initially appears to contend that an insane person may not be brought to trial for his or her allegedly criminal acts. This contention is not valid. Assuming that plaintiff has in fact been declared insane in a judicial proceeding,[1] that fact

1. We do not know that plaintiff has in fact been declared insane in a judicial proceeding but, for purposes of this opinion, we are assuming that she has been, in order to state the strongest possible case in her favor.

would not preclude her being brought to trial for a subsequent allegedly criminal act. *See* Whitney v. Zerbst, 62 F.2d 970 (10th Cir. 1933); Wheeler v. State, 34 Ohio St. 394, 32 Am.R. 372 (1878); 22 C.J.S. Criminal Law § 56 (1961). Furthermore, even one who has been judicially declared insane is criminally responsible for acts committed during a lucid interval. 22 C.J.S. Criminal Law § 57 (1961).

 Plaintiff next asserts that because Miss Carter informed defendants of plaintiff's incompetence, defendants lacked probable cause to arrest plaintiff since that information assertedly explained much of her strange behavior at the scene of the suspected crime. We are not aware of any authority that requires a police officer at the scene of a suspected crime to accept as true the gratuitous assertion of one suspect that another suspect is mentally incompetent. Even assuming that defendants believed that plaintiff was incompetent and that this explained some of plaintiff's reactions and responses to defendants' interrogation, there remained unexplained physical facts and circumstances previously set forth herein which were still sufficient to constitute a basis for defendants' belief that plaintiff had committed a crime.

Further, it would appear implicit in all of plaintiff's contentions—including the one just discussed—that the investigating police officer must determine the sanity of a suspect before deciding whether to arrest him or to file a criminal complaint against him. That is not the law, nor should it be. The issue of insanity does not lend itself to curbside adjudication. It is a matter to be raised by a criminal accused at an adversary proceeding. Only when that issue is properly raised must the converse be proven by the state beyond a reasonable doubt. State v. Cano, 103 Ariz. 37, 436 P.2d 586 (1968); State v. Martin, 102 Ariz. 142, 426 P.2d 639 (1967). Our legislature has provided a far more adequate method of determining the sanity of a criminal accused than plaintiff would have us employ. See A.R.S. Sec. 13–1621.01.

Also implicit in plaintiff's contentions, and equally erroneous, is the assumption that a want of probable cause is conclusively shown by the fact that the criminal proceedings herein were terminated in plaintiff's favor. Subsequent dismissal of the criminal proceedings does not in and of itself indicate that there was no probable cause at the time the arrest was made or charges filed. Patterson v. City of Phoenix, *supra; see* Steadman v. Topham, 80 Wyo. 63, 338 P.2d 820 (1959).

The judgment of the trial court is affirmed.

EUBANK, P. J., and JACOBSON, J., concur.